Jack Showell v. Commissioner. Dorothy Showell v. Commissioner.
Showell v. Commissioner
Docket Nos. 48153, 48154.
United States Tax Court
T.C. Memo 1960-7; 1960 Tax Ct. Memo LEXIS 277; 19 T.C.M. (CCH) 30; T.C.M. (RIA) 60007; January 29, 1960
*277 W. Lee McLane, Jr., Esq., Security Building, Phoenix, Ariz., for the petitioners. Earl C. Crouter, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: This proceeding is again before us pursuant to remand from the Court of . The respondent originally determined deficiencies in income tax for 1949 against Jack Showell in the amount of $3,946.65 and against Dorothy Showell in the amount of $4,065.69, based upon a determination that each realized income of $11,281.83 in that year from wagering operations which was not reported on their returns. We held in that in computing the income from wagering, an additional deduction of $3,000 for wagering losses should be allowed. The Court of Appeals remanded on the ground that the findings of fact were not sufficiently definitive. Thereupon we revised our findings of fact and reached the same conclusion in , filed January 31, 1957 [; The Court of Appeals has now remanded for receiving further *278 evidence, particularly as to the authenticity of Exhibit 3. We have received evidence on the point involved and no other evidence has been offered. Since we adhere to the same conclusion formerly reached we consider it unnecessary to set aside our previous findings of fact and decision. The findings of fact formerly made are restated here for convenience, and are as follows: Findings of Fact "The petitioners are husband and wife and filed their separate income tax returns for 1949, prepared on the community basis, with the collector for the district of Arizona. "In their returns for 1949 the petitioners reported income from interest, from a partnership, and rental income from a building. No income was reported from, or loss deducted with respect to, any wagering operations. "During 1949 Jack Showell, sometimes referred to as the petitioner, received money from booking bets on baseball, football and basketball games. No receipts or tickets were given for money placed on bets. The petitioner did not keep regular, adequate and permanent books and records of his wagering transactions. "Petitioner had unreported income from wagering operations in 1949 amounting to $19,563.66." *279 Opinion The Court of Appeals on the second review is "sorely troubled" with Exhibit 3, a record of the petitioner's gains and losses from wagering, and the opinion is expressed that the contemporaneousness of the entries thereon should be capable of proof or disproof. The Court remanded for us to receive further evidence, particularly inquiring as to the authenticity of this exhibit, with the suggestion that we should set aside our findings of fact and decision. Exhibit 3 reads as follows: SPORTS - 1949
Gain
Loss
Jan. 1
$ 3,950.00
Sept. 17
$ 882.50
Sept. 24
97.10
Oct. 2
3,469.35
Oct. 8
6,571.95
Oct. 9
686.00
Oct. 15
1,363.60
Oct. 22
3,211.00
Oct. 29
2,026.00
Nov. 5
3,767.55
Nov. 13
4,346.50
Nov. 19
1,079.70
Nov. 20
1,241.10
Nov. 27
402.60
Dec. 3
1,016.73
Dec. 3
450.00
Dec. 5
20.00
Dec. 6
43.00
Dec. 7
21.00
Dec. 1 Rent
125.00
Dec. 9
510.00
Dec. 10
274.50
Dec. 11
570.00
Dec. 12
372.00
Dec. 13
902.00
Dec. 14 W.U.
59.40
Dec. 14
164.80
Dec. 15
153.15
Dec. 16
705.99
Dec. 17
584.00
Dec. 18
487.00
Dec. 19
859.00
Dec. 20
796.00
Dec. 21
96.00
Dec. 22
31.00
A.P. Dec. 22
60.00
Tele Dec. 22
100.82
Dec. 23
1,106.00
Dec. 31
2,447.50
Leech Dec. 31
1,350.00
$22,908.88
$23,489.97
22,908.88
$ 581.09
*280 Pursuant to the remand we have received further evidence. A witness qualified in the analysis of handwriting examined the exhibit, prepared a photographic enlargement of it which was introduced in evidence, and testified in detail concerning the entries. The witnesses examined microscopically the width of the pencil strokes and compared their density and color and the proportions of the letters, and expressed the following opinions. The entries under dates from January 1 through December 7 were made by the same person at one time and not on different dates shown, and each column giving dates, gains and losses was written from the top down, rather than entering each line horizontally, down to and including the date December 7. The subsequent entries were made by a different person and the writing appeared to be that of Jack Showell, based upon a comparison of the wirting on the exhibit with the writing on the latter's checks. The entry following December 7, dated December 1, showed variations in the three entries on the same line, the word "Rent" was not written with the same pencil as the date, and the amount of $125 was not written immediately after the date. The entries under the *281 dates of December 10, 11, and 12, which were in ink, were written at the same time. In the entry of December 14, W.U. $59.40, the W.U. was not written at the same time as the date, at least not without putting the pencil down, and it appears to have been written with a different pencil. In the entries under December 15 and 16 the figures appear to be consistent with the dates and written at the same time. The date December 17 and the amount of $584 were not written at the same time. The entries under the dates December 18 through 22 were written from the top down and the amounts in the gain column were written at the same time from the top down, the entries in the corresponding loss column were not made at the same time as the dates, and the amounts of $60 and $100.82 were written at one time. The entries under the date of December 31 and the closing entries are in ink and were written at the same time. This testimony appears to contradict the testimony of Showell as to the contemporaneousness of the exhibit. Showell testified: "Q. Mr. Showell, at the end of the year when Exhibit 3, the original of which you have there, was made up, just exactly what papers did you and Mr. Walsh *282 have before you in making the Exhibit? "A. This was not made at the end of the year. This was made every week or day and they were entered on the sheet for that day or week. This was not made up at the end of the year. Just the totals were made up at the end of the year." Upon consideration of the additional evidence introduced, we find no good reason to depart from the findings of fact and decision previously entered. The evidence tends to support our previous distrust of the authenticity of Exhibit 3 as a contemporary record. There is another reason, not mentioned in our prior opinions, for our distrust of Exhibit 3 as an authentic record with respect to losses. The items in the loss column under the date of December 31, according to Showell represented amounts due him from bettors who had not paid him at the end of the year. The item of $1,350 was owed him by Leech and the item of $2,447.50 was made up of different amounts owed by other bettors. Showell admitted that some of these were collected in the following year. To this extent, at least, these were not actually losses. If anything, we think the record as it now stands is weaker for the petitioners than it was at first. *283 However, we find no compelling reason for changing the original result. Accordingly, we adhere to the conclusion heretofore reached. The record shows that the deficiencies computed pursuant to our former decision have been paid. Decision will again be entered that there is no deficiency due from or overpayment due to the petitioners for the calendar year 1949.